1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMENCITA DORADO, an individual,<br><br>       Plaintiff,<br><br>         v.<br><br>SHEA HOMES LIMITED PARTNERSHIP, a California Limited Partnership, CHICAGO TITLE COMPANY, a Business Entity, form unknown; BAC HOMES LOANS SERVICING, LP, A Business Entity, form unknown; RECONTRUST COMPANY, a Business Entity, form unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation; and DOES 1 through 50, inclusive,<br><br>       Defendants. | 1:11-cv-01027 OWW SKO<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT (DOC. 5, 7 and 12) |

I. <u>INTRODUCTION.</u>

    Carmencita Dorado ("Plaintiff"), appearing *in propria persona*, asserts twenty-nine (29) causes of action arising out of an adjustable-rate home loan she entered into approximately four years ago. BAC Home Loans Servicing, L.P., Recontrust Company, Mortgage Electronic Registration Systems, Inc. ("BAC

1

Defendants"), Shea Homes, LP ("Shea Homes"), and Chicago Title Company ("Chicago Title") (collectively "Defendants") move to dismiss all of Plaintiff's claims.

All Defendants allege that Plaintiff's Complaint is "incomprehensible," "conclusory" and most of what is pleaded is irrelevant. The Complaint, Defendants assert, fails to give fair notice of the claims asserted against Defendants; fails to state any valid cause of action; and most or all of Plaintiff's claims are barred by the applicable statutes of limitation.

BAC Defendants additionally assert that Plaintiff has a Chapter 13 bankruptcy case pending in the Northern District of California and lacks standing to file this action as the trustee and not Plaintiff is the "real party in interest." (Doc. 12 at 4.)

Shea Homes specifically asserts that it has been mistakenly named and has nothing to do with Plaintiff's mortgage. "Shea Homes, a California limited partnership, sold the home to Plaintiff, [and is an] entirely separate entity [from] Shea Mortgage Inc., a California corporation, [who] was Plaintiff's lender." (Doc. 5 at 1.)

Chicago Title adds that "it is not Plaintiff's lender, loan broker, or loan servicer, and Chicago [Title] has no role in the foreclosure process." (Doc. 7 at 9.)

///

1

2    ## II. PROCEDURAL HISTORY

3         Plaintiff filed this action in California state court on

4    April 27, 2011. The case was removed to this court on June 17,

5    2011. (Doc. 1.) Defendants' filed motions to dismiss Plaintiff's

6    Complaint on June 24, 2011, (doc. 5, 7), and July 11, 2011, (doc.

7    12). Plaintiff filed oppositions to Defendants' motions on July

8    29, 2011. (Doc. 14, 15, 16.)

9
     ## III. BACKROUND FACTS
10
          Plaintiff is the owner of real property located at 209
11
     Abelia Lane, Patterson, California 95363 (the "Property").
12
     (Compl. ¶ 22.) Plaintiff obtained a loan for $421,650.00 on
13
     September 5, 2006 from Shea Mortgage, Inc. She executed a deed of
14
     trust ("Deed of Trust") against the Property, with MERS appointed
15
     as beneficiary and Chicago Title Company as the original Trustee.
16
     (Compl. ¶ 33; Chicago Tile RJN, Ex. A.)
17
          Plaintiff's native language is Tagolog. (Compl. ¶ 38.) The
18
     terms of the loan were explained to Plaintiff in English. (Compl.
19
     ¶ 38.)
20
           The loan contained an adjustable rate rider which Plaintiff
21
     executed on September 8, 2006. (Chicago Title RJN, Ex. A.)
22
     Plaintiff stopped paying her mortgage.  As a result, Defendant
23
     Recontrust issued a Notice of Default, which was recorded in
24
     Stanislaus County on June 1, 2009. (Compl. ¶ 12; Chicago Title
25
     RJN, Ex. B, C.) It does not appear that a Notice of Trustee's
26

27

28
                                   3

Sale was ever issued or recorded. Plaintiff alleges in her Complaint at paragraph 118 that unspecified Defendants "have completed a foreclosure action under the Note [sic] by way of non-judicial sale"; however, at paragraph 119, she seeks an injunction to prevent the same trustee's sale.

On May 25, 2011, Defendant MERS substituted Recontrust as trustee under the Deed of Trust, and assigned the Deed of Trust to Citibank, N.A., as Trustee for the Holders of Bear Stearns ALT-A Trust 2006-7 Mortgage Pass-Through Certificates, Series 2006-7. (*See* Chicago RJN, Ex. D, E.)

Plaintiff filed for bankruptcy in the Northern District of California on August 7, 2009, approximately one month after the Notice of Default was recorded. (BAC Defendants RJN, Ex. 3.) The Second Amended Chapter 13 Plan was filed by Plaintiff on June 6, 2011 and the bankruptcy court's docket reflects that confirmation of Plaintiff's bankruptcy plan is still pending. (BAC Defendants RJN, Ex. 3, 4.) This explains why a notice of sale was not recorded, absent lifting of the automatic stay.

IV. <u>STANDARD OF DECISION</u>

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). In deciding whether to grant a motion to dismiss, the court "accept[s] all factual allegations of the complaint as true and draw[s] all

4

reasonable inferences" in the light most favorable to the nonmoving party. *Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir.2002). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (*citing Twombly*, 550 U.S. 556-57).

Nevertheless, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While the standard does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a

cause of action."   *Twombly*, 550 U.S. at 555; *Iqbal*, 129 S. Ct. at

1950 ("Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice.").

    In ruling upon a motion to dismiss, the court may consider

only the complaint, any exhibits thereto, and matters which may

be judicially noticed pursuant to Federal Rule of Evidence 201.

*See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir.

1988).


V. DISCUSSION

A.   Standing.

    1.   Creation of Bankruptcy Estate.

    BAC Defendants contend that Plaintiff has a Chapter 13

bankruptcy case pending in the Northern District of California

and lacks standing to file this action as the trustee and not

Plaintiff is the "real party in interest" under Fed. Civ. Pro. R.

17(a) to prosecute this action Plaintiff does not address the

bankruptcy issue.

    In general, the court may not consider materials other than

the facts alleged in the complaint when ruling on a motion to

dismiss. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir.1996).

"[A]mple authority exists," however, "which recognizes that

matters of public record, including court records in related or

underlying cases which have a direct relation to the matters at

issue, may be looked to when ruling on a 12(b)(6) motion to

dismiss." *In re Am. Continental Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir.1996) (collecting cases), *rev'd on other grounds by Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).  Here, Defendants have provided the court with Plaintiff's petition for Chapter 13 bankruptcy protection dated August 2, 2009. (BAC Defendants RJN, Ex. 4, Dorado Bankruptcy Case Summary.)  Hearing no objection from Plaintiff the bankruptcy documents will be consider this document in deciding Defendants' motion to dismiss.

The filing of a bankruptcy petition creates an estate in bankruptcy.  *See* 11 U.S.C. § 541(a); *In re Raintree Healthcare Corp.*, 431 F.3d 685, 688 (9th Cir.2005).  A bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  In a Chapter 13 case, the estate also includes property acquired by the debtor after the commencement of the case.  11 U.S.C. § 1306(a)(1).  The property of the estate includes causes of action that arise after the commencement of the case and until the case is closed, dismissed or converted. *Donato v. Metropolitan Life Ins. Co.*, 230 B.R. 418, 421 (N.D.Cal. 1999) (*citing In re Fleet*, 53 B.R. 833, 838 (Bankr. E.D.Pa. 1985).[1]

---

[1]  The debtor must disclose any litigation likely to arise in a non-bankruptcy context. *See Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992). If the debtor is not knowledgeable of all the facts giving rise to a civil action before the filing of his or her petition and

7

The Code expressly provides that Chapter 13 debtors retain possession of property in the bankruptcy estate.  *See* 11 U.S.C. § 1306(b) ("[e]xcept as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of ail property of the estate"); *see also, e.g.*, 11 U.S.C. § 1303 (providing that debtors under Chapter 13 shall have substantially the same powers as do trustees of the estate).  The Bankruptcy Code provides that a debtor in possession, such as a debtor filing for the protections of Chapter 13, enjoys express authority to sue or to be sued on behalf of the bankruptcy estate:

> With or without court approval, the trustee or <u>debtor in possession may prosecute</u> or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal.

Fed. R. Bankr.P. 6009 (emphasis supplied).

The Ninth Circuit has stated:

> In [Chapter 7] liquidation proceedings, *only* the trustee has standing to prosecute or defend a claim belonging to the estate.  The same cannot be said for trustees under the reorganization chapters.  In those regimes, the debtor has express authority to sue and be sued.  Bankruptcy Rule 6009, which applies to Chapters 7, 11 and 13, directs that "[w]ith or without court approval, the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal." Fed. R. Bankr.P. 6009 (emphasis added).  [T]he Chapter 13 debtor has

---

financial schedules, the debtor must amend those schedules when he or she becomes aware of the existence of the action because it is an asset of the bankruptcy estate. *See id.*; Fed.R.Bankr.P. 1009(a) (schedules may be amended before the case is closed).

> been considered analogous to Chapter 11, which grants the
> debtor full authority as representative of the estate
> typical of a trustee.  See 11 U.S.C. § 1107.

*In re DiSalvo*, 219 F.3d 1035, 1039 (9th Cir. 2000) (emphasis in

original) (*quoting Cable v. Ivy Tech State College*, 200 F.3d 467,

472 (7th Cir. 1999).

The Seventh Circuit is in accord. *Cable v. Ivy Tech State*

*College* further explains:

> Chapter 7 establishes a much more radical solution to
> indebtedness, requiring the liquidation of the debtor's
> property, to which end Congress granted the trustee broad
> powers without interference from the debtor. The trustee has
> sole authority to dispose of property, including managing
> litigation related to the estate. See 11 U.S.C. §§
> 541(a)(1), 704(1). Chapter 13, on the other hand, encourages
> the debtor to pay his debts over time by establishing a
> court-approved payment plan but leaving the debtor in
> possession of the estate. See 11 U.S.C. § 1303 (debtor-in-
> possession has substantially same powers as the trustee in
> other chapters); § 1306(b) (debtor retains possession of
> estate except as limited by plan). The trustee acts as an
> adviser and administrator to facilitate the repayment of
> debts according to the plan. See id. § 1302.

200 F.3d at 472; *see also Whitworth v. National Enterprise*

*Systems, Inc.*, 2009 WL 650357, *2 n.1 (D.Or. 2009) ("the Chapter

7 debtor, who has selected a severe remedy to the problem of

indebtedness, is not permitted to interfere in the disposal of

assets in which he or she no longer has any significant interest,

but the Chapter 13 debtor, who contemplates resuming exclusive

control of his or her assets after successfully repaying all

creditors, is permitted to retain possession of and a part in

managing the estate.")

The Second Circuit is also in accord that it would frustrate

the purposes of Section 1306 to leave the debtor in possession of his causes of action and yet to prohibit him from prosecuting them in his own name. *See Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 515, 515-516 (2d Cir.1998) (holding that "a Chapter 13 debtor ... has standing to litigate causes of action that are not part of a case under title 11" and deriving support from the legislative history of Chapter 13 for the proposition that Section 1303 was drafted to permit Chapter 13 debtors to sue and be sued on behalf of the bankruptcy estate); *see also Donato v. Metropolitan Life Ins. Co.*, 230 B.R. 418, 425 (N.D.Cal.1999) ("under 11 U.S.C. § 1303, a Chapter 13 debtor retains the capacity to sue on prepetition causes of action").

Although a Chapter 13 debtor has standing to sue in her own name, such standing is concurrent with that of the trustee in bankruptcy, and any such suit must necessarily be on behalf of the bankruptcy estate. *See* Fed. R. Bankr. P. 6009. In this case pursuant to Plaintiff's bankruptcy documents, Plaintiff's mortgage is "submitted to the supervision and control of the Trustee." (BAC Defendants RJN, Ex. 3.)[2] Plaintiff does not appear

---

[2] Plaintiff does not allege or provide evidence that the trustee is aware of this action. Likewise, the bankruptcy docket does not reflect notice of this action. In Chapter 13, the bankruptcy estate includes claims which are acquired "after the commencement of the case but before the case is closed, dismissed, or converted." 11 U.S.C. 1306(a)(1). The Bankruptcy Code subjects debtors to a "continuing duty to disclose all pending and potential claims." *Kane v. National Union Fire Ins. Co.*, 535 F.3d 380, 384-85 (2008); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 785 (2001) ("The debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceeding."); *see In re Coastal Plains, Inc.*, 179 F.3d 197, 207-08 (1999).

to be "a debtor in possession" and does not have standing to bring this suit.

B.  <u>Shea Homes Is Not A Proper Defendant.</u>

Plaintiff alleges that Shea Homes was the original lender for the purchase of her home. (Compl. ¶¶ 8, 17, 33.) In reality, Shea Homes, a California limited partnership, sold the home to Plaintiff. (*See* Shea Home's RJN, Ex.3.) An entirely separate entity, Shea Mortgage Inc., a California corporation, was Plaintiff's lender.  (*See* Shea Home's RJN, Ex. 1, 2, 4.) This is established in the recorded trust deeds for the Plaintiff's first and second mortgages. (*See id*. at Ex. 1, 2.)  Because Shea Homes did not originate and does not now, and has not ever asserted any interest in Plaintiff's mortgage, Shea Homes is DISMISSED from this action and Shea Home's motion to dismiss is GRANTED.

C.  <u>Plaintiff's Claims.</u>

1.  <u>Violation of Cal. Com. Code § 9313 (Third Claim).</u>

Plaintiff's third cause of action seeks to determine the nature, extent, and validity of the lien under Cal. Com. Code 9313.  Plaintiff apparently alleges that since neither Shea Homes nor BAC Defendants possess the original promissory note, neither one has perfected its lien.

Defendants correctly contend that Cal. Com. Code 9313 is

---

"[T]he integrity of the bankruptcy system depends on full and honest disclosure by debtors of all their assets." *Hamilton*, 270 F.3d at 785 (*quoting In re Coastal Plains*, 179 F.3d at 208 (emphasis in original).

part of the codification of UCC Article 9, which deals with security interests in *personal* property and fixtures. *See* Cal. Com. Code 9109(d)(11) ("this division does not apply to. . . : The creation or transfer of an interest in or lien on real property.") This section of law has no application to Plaintiff's loan.

Defendants further correctly contend that Plaintiff's "holder of the note theory" is not the law in California.

"Financing or refinancing of real property is generally accomplished in California through a deed of trust. The borrower (trustor) executes a promissory note and deed of trust, thereby transferring an interest in the property to the lender (beneficiary) as security for repayment of the loan." *Bartold v. Glendale Federal Bank*, 81 Cal.App.4th 816, 821 (2000). A deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid." *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1235 (1995).

The California Court of Appeal has explained non-judicial foreclosure under the applicable California Civil Code sections:

> The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive.... It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

*Moeller v. Lien*, 25 Cal.App.4th 822, 834 (1994); *see I.E. Assoc.*

12

*v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 285 (1985) ("These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.")

Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process.  Under Cal. Civ. Code section 2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee."

"Under Civil Code section 2924, no party needs to physically possess the promissory note." *Sicairos v. NDEX West, LLC*, 2009 WL 385855, *3 (S.D. Cal. 2009) (*citing* Cal. Civ. Code, § 2924(a)(1)).  Rather, "[t]he foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee ." *Moeller*, 25 Cal. App. 4th at 830.  An "allegation that the trustee did not have the original note or had not received it is insufficient to render the foreclosure proceeding invalid." *Neal v. Juarez*, 2007 WL 2140640, *8 (S.D. Cal. 2007).

Plaintiff offers no response.

A "purported holder" argument fails as a matter of law. Defendants' motion to dismiss Plaintiff's Cal. Com. Code 9313 is GRANTED.

2.   **Contract Claims Based on Origination of Loan.**

    a.   **Implied Covenant of Good Faith and Fair Dealing (Fourth Claim).**

        (1)   **Timeliness.**

BAC Defendants correctly argue that Plaintiff's fourth cause of action for violation of the implied covenant of good faith and fair dealing is subject to the four year contract statute of limitation.  Code Civ. Proc. § 337(1) (stating that a plaintiff must bring an action "[w]ithin four years. . . upon any contract, obligation or liability founded upon an instrument in writing.")

Plaintiff asserts that "[Defendants] willfully breached their implied covenant of good faith and fair dealing with [Plaintiff] when [Defendants]:

I.   Willfully withheld numerous disclosures;

II.  Willfully withheld notices in regard to Underwriting standards, the use of English as the only language within the written instruments of the loan while [Plaintiff's] native language is Tagalog, Disclosures of additional income due to interest rate increases, and  failure to disclose when negative credit scores were disseminated;

III. Willfully placed [Plaintiff] in a loan that she did not qualify for, [and] could not afford. . .

IV.  Requiring a minimal down payment, subjecting 95% of the loan to amortization and a detrimental if not dire financial situation for [Plaintiff].

(Compl. ¶ 130.)

Defendants contend these claims arise from the execution of the loan which took place in September 2006, well over four years ago. Plaintiff does not refute this argument; her fourth claim is

14

untimely.

b.   <u>Merits.</u>

The thrust of Plaintiff's fourth claim for breach of implied covenant of good faith and fair dealing claim alleges that Defendants willfully withheld disclosures and notices regarding an increase on interests rates on her loan and placed Plaintiff in a loan that she did not qualify for and could not afford.

Defendants correctly rejoin that the implied covenant applies to conduct occurring *after* an agreement has been entered, and not conduct leading up to the agreement's formation, i.e., that Plaintiff has not alleged any specific term of the contract performed in bad faith.

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement."  *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (2000) (*quoting Comunale v. Traders & General Ins. Co.*, 50 Cal.2d 654, 658 (1958)). The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1093-1094 (2004) (citation omitted).  The "scope of conduct prohibited by the covenant of good faith is circumscribed by the

purposes and express terms of the contract." C*arma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th 342, 373 (1992). "[T]he implied covenant will only be recognized to further the contract's purpose; it will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself." *Wolf v. Walt Disney Pictures and Television*, 162 Cal. App. 4th 1107, 1120 (2008). "The covenant 'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.'" *Agosta v. Astor*, 120 Cal.App.4th 596, 607 (2004) (*quoting Guz v. Bechtel Nat. Inc*. 24 Cal. 4th 317, 349-350 (2000)).

The Complaint fails to allege or identify a contract provision to invoke an implied covenant to impose liability on any Defendant for alleged wrongs. Plaintiff is unable to resort to an implied covenant to manufacture non-existent obligations. Further, there is no special relationship between a lender and borrower. *Spencer v. DHI Mortg. Co., Ltd.*, 642 F. Supp. 2d 1153, 1162 (E.D. Cal. 2009) (*citing Oaks Mgmt. Corp. v. Superior Court*, 145 Cal. App. 4th 453 (Cal. Ct. App. 2006).

Defendants' motion to dismiss Plaintiff's fourth claim is GRANTED.

3.   <u>Unconscionable Contract (Sixteenth Claim)</u>.

In her sixteenth cause of action Plaintiff asserts the loan

16

agreement and trust deed are unconscionable because at the time of execution, Defendants were "decepti[ve], [had an] unfair bargaining position, [and did not] adhere[] to the regulations, civil codes and federal standards that [Defendants] were required to follow." (Compl. ¶ 210.)

### a.   Timeliness.

Plaintiff's contract claim is subject to the four year contract statute of limitation.   Code Civ. Proc. § 337(1). Defendants assert Plaintiff's unconscionably claim arises from the execution of the loan which took place over four years ago in September 2006.   Plaintiff does not refute this argument; her sixteenth claim is untimely.

### b.   Merits.

Plaintiff alleges unconscionability pursuant to Uniform Commercial Code section ("UCC") 2-3202, asserting that "based on the deception, unfair bargaining position, lack of adherence to the regulations, civil codes and federal standards ... the court may find that the loan agreement and trust deed are unconscionable and of no force or effect." (Compl. ¶ 210.)

Defendants state that the Complaint's citation to "[UCC] § 2-3202" appears intended to apply to [Cal. Civ. Code §] 1670.5 ("section 1670.5"), which codifies [UCC] § 2-302." (*See* Doc. 7 at 18.) Defendants point out that section 1670.5 is "a common law defense to a breach of contract action, permitting a defendant to

present evidence of a commercial setting, purpose and effect of a

contract or clause to aid a court in making a determination."

(*See id.*)  Defendants further contend that section 1670.5 does

not create a private right of action.

Section 1670.5(a) provides:

If the court as a matter of law finds the contract or any
clause of the contract to have been unconscionable at the
time it was made the court may refuse to enforce the
contract, or it may enforce the remainder of the contract
without the unconscionable clause, or it may so limit the
application of any unconscionable clause as to avoid any
unconscionable result.

Unconscionability has "procedural" and "substantive"

elements.  *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473,

486 (1982). The procedural element focuses on: (1) "oppression,"

which "arises from an inequality of bargaining power which

results in no real negotiation and 'an absence of meaningful

choice'"; and (2) "surprise" which "involves the extent to which

the supposedly agreed-upon terms of the bargain are hidden in a

prolix printed form drafted by the party seeking to enforce the

disputed terms."  *A & M Produce*, 135 Cal. App. 3d at 486

(citations omitted).  The substantive element turns on

"allocation of risks between the parties, and therefore that a

contractual term is substantively suspect if it reallocates the

risks of the bargain in an objectively unreasonable or unexpected

manner" to constitute a "one-sided" result without

"justification" for it.  *Id.* at 487 (citations omitted).

Plaintiff's Complaint is does not plead any facts alleging

18

any Defendant engaged in "oppression, surprise, or overly-harsh conduct" to suggest the availability of the unconscionability defense.   Defendant's motion to dismiss Plaintiff's unconscionability claim is GRANTED.

### 4.   Breach of Contract (Twenty-Ninth Claim).

Plaintiff's twenty-ninth cause of action for breach of contract contends that there was "no fair and reasonable consideration" for the contract. This is absurd. Plaintiff was loaned over $400,000 to purchase a residence.

#### a.   Timeliness.

Defendants again assert that Plaintiff's contract claim for breach is subject to the four year statute of limitations, Code Civ. Proc. § 337(1), and that Plaintiff's claim arises from the execution of the loan which took place in September 2006, over four years ago.   Plaintiff does not refute this argument; her twenty-ninth claim is untimely.

#### b.   Merits.

Plaintiff's claim for breach of contract asserts "there was no fair and reasonable consideration." (Compl. ¶ 288.) Plaintiff appears to allege rescission of the contract, and not breach of contract.

California law allows a party to seek rescission for failure of consideration. *See* Cal. Civ. Code § 1689(b)(2), (3), (4). The

right to rescind exists even if "there has been a partial

performance by the party against whom the right is exercised."

*Coleman v. Mora*, 263 Cal.App.2d 137, 150 (1968) (citations

omitted). "[A] failure of consideration must be 'material,' or go

to the 'essence' of the contract before rescission is

appropriate." *Wyler v. Feuer*, 85 Cal.App.3d 392, 403-04 (1978)

(citations omitted).

Plaintiff's Complaint does not plead facts which demonstrate

how consideration is lacking in the Loan contract or whether the

alleged lack of consideration is material or essential to the

contract.  Her Complaint merely states that there was no fair and

reasonable consideration.

Defendant's motion to dismiss Plaintiff's twenty-ninth

claim is GRANTED.

5.   <u>TILA Claims.</u>

a.   <u>Damages (Fifth Claim).</u>

TILA provides that a plaintiff can bring an action to

recover damages "within one year from the date of the occurrence

of the violation."  15 U.S.C. § 1640(e).  Plaintiff's TILA claim

for damages is time-barred.

(1)  <u>Equitable Tolling.</u>

Plaintiff apparently argues equitable tolling applies

because (1) the loan documents she received were only in English,

despite that her native language is Tagolog and (2) because the

increase in her initial low interest rate only lasted one month when she believe it would last a year. (*See* Compl. ¶ 136; Doc. 15 at 3.) The increase in the interest rate was never explained to her and "[b]y the time she realized what had occurred, it was too late and the amounts owed could not be satisfied by her." (Doc. 15 at 3.)

The equitable tolling doctrine requires more. "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of [her] claim." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000). *Santa Maria* explains:

> Unlike equitable estoppel, equitable tolling does not depend on any wrongful conduct by the defendant to prevent the plaintiff from suing. Instead it focuses on whether there was excusable delay by the plaintiff. If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing until the plaintiff can gather what information he needs.... However, equitable tolling does not postpone the statute of limitations until the existence of a claim is a virtual certainty.

202 F.3d at 1178 (citation omitted).

Courts are reluctant to invoke equitable tolling:

> A statute of limitations is subject to the doctrine of equitable tolling; therefore, relief from strict construction of a statute of limitations is readily available in extreme cases and gives the court latitude in a case-by-case analysis.... The equitable tolling doctrine has been applied by the Supreme Court in certain circumstances, but it has been applied sparingly; for example, the Supreme Court has allowed equitable tolling when the statute of limitations was not complied with because of defective pleadings, when a claimant was tricked by an adversary into

letting a deadline expire ... Courts have been generally
unforgiving, however, when a late filing is due to
claimant's failure "to exercise due diligence in preserving
his legal rights." ...

*Scholar v. Pac. Bell*, 963 F.2d 264, 267-268 (9th Cir.1992) (bold
added; citations omitted).

A plaintiff "must specifically plead facts to show (1) the
time and manner of discovery and (2) the inability to have made
earlier discovery despite reasonable diligence." *Fox v. Ethicon
Endo-Surgery, Inc.*, 35 Cal.4th 797, 808 (2005) (*quoting McKelvey
v. Boeing North American, Inc.*, 74 Cal. App. 4th 151, 160
(1999)). "[T]o adequately allege facts supporting a theory of
delayed discovery, the plaintiff must plead that, despite
diligent investigation of the circumstances of the injury, he or
she could not have reasonably discovered facts supporting the
cause of action within the applicable statute of limitations
period." *Fox*, 35 Cal. 4th at 809.

Here, both of Plaintiff's tolling arguments fail.  First,
"[B]are assertions [of language barriers] are [] insufficient to
provide a basis for equitable tolling." *Pica v. Wachovia Mortg.*,
No. CV 09-02372 GEB, 2010 WL 1525069, at *4 (E.D. Cal. Apr. 15,
2010). Even if loan documents were not provided in Plaintiff's
native language, a reasonable Plaintiff, taking out a $421,650.00
mortgage is reasonably expected to seek a translation of the
documents at inception of the loan or at least sometime before
the limitations period ended. *See Lucero v. Diversified*

*Investments Inc.*, No. CV 09-1742 BTM, 2010 WL 3463607, at *3 (S.D. Cal. Aug. 31, 2010) (dismissing Plaintiffs' TILA claim, stating, "a diligent plaintiff would have the documents translated before the statute of limitations had expired.").

Second, Plaintiff's late discovery of her Loan's interest rate increase is unreasonable.  Plaintiff asserts that the initial interest rate became more than she could afford within the first month of her loan payment was due, despite her belief that the "low interest rates would remain in place for at least a year."  These circumstances, at a minimum, put Plaintiff on notice within a few months of execution of the note that something was amiss with the loan.  Nonetheless, Plaintiff performed on the contract and did nothing to attempt to discover the alleged violations until she stopped payment on her loan and fell into default.  *See Ortega v. Wells Fargo Bank*, No. CV 09-1531 JM, 2010 WL 1904878, at *3 (S.D. Cal. May 11, 2010) (denying equitable tolling where Plaintiff "did not question the propriety of his loan documents until months after he stopped paying his mortgage").

Equitable tolling does not apply and Plaintiff's claims are untimely.  Defendant's motion to dismiss Plaintiff's fifth claim for damages for violation of TILA is GRANTED.

> a.   <u>Rescission (Ninth and Twelfth Claim).</u>[3]

---

[3] Plaintiff alleges a "rescission" claim generally under TILA, 15 U.S.C. §

Defendants contend that Plaintiff recession claim is subject to, at most, a three year statute of limitations.  The consumer's right to rescission is absolute only for a period of three days after the loan is consummated, 15 U.S.C. 1635(a); 12 C.F.R. 226.23(a)(3), unless the lender fails to provide "material disclosures" at the closing, in which case the period is extended to three years, 15 U.S.C. 1635(f); 12 C.F.R. 226.23(a)(3). It has been more than three years since Plaintiff's Loan was executed. Her rescission claims are time-barred as a matter of law.

### (1)   Equitable Tolling.

Plaintiff alleges the doctrine of equitable tolling applies to her rescission claim because her loan documents were not in her native language.  A "language barrier" excuse is not sufficient and is unjustified.

Nonetheless, equitable tolling does not apply to rescission under this provision of TILA.  If the borrower files his or her suit over three years from the date of a loan's consummation, a court is powerless to grant rescission.  *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir.2002) ("[S]ection 1635(f) represents an 'absolute limitation on rescission actions' which bars any claims filed more than three years after the consummation of the transaction." (*quoting King v. California*, 784 F.2d 910, 913 (9th Cir. 1986)); *accord Beach v. Ocwen Fed.*

---

1601, *et. seq.* (fifth claim) and a separate claim under the TILA regulation, 12 C.F.R. § 226.23(a)(3), which directly relates to rescission (ninth claim).

24

*Bank*, 523 U.S. 410, 412 (1998) ("[Section] 1635(f) completely extinguishes the right of rescission at the end of the 3-year period.").

Plaintiff executed the Loan on September 5, 2006, over three years ago. Defendants' motion to dismiss Plaintiffs' rescission claim is GRANTED.

6.   <u>Fraud (Thirteenth Claim).</u>

The Complaint's fraud claim alleges fraudulent loans because Defendants "deceiv[ed] [Plaintiff] and [induc[ed] them [sic] to part with their personal and real property." (Compl. ¶ 180.)

a.   <u>Timeliness.</u>

Defendants contend that Plaintiff's thirteenth cause of action for fraud and misrepresentation are barred by the three-year statute of limitations.  Cal. Code of Civ. Pro. § 338(d) imposes a three-year statute of limitations on actions based upon fraud.  Plaintiff's fraud claim is time-barred. In view of the bar of the statute of limitation, amendment would be futile.

b.   <u>Merits.</u>

Defendants challenge the fraud claim's lack of necessary particularity required by Fed. R. Civ. Pro. 9(b).

(1)   <u>Elements.</u>

The elements of a California fraud claim are: (1) misrepresentation (false representation, concealment or

nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.  *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).  The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance.  *Caldo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004).

"[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of action."  *Conrad v. Bank of America*, 45 Cal. App. 4th 133, 156 (1996).  There must be a showing "that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." *Id.* at 157.  "The absence of any one of these required elements will preclude recovery."  *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1332 (1986).

(2)   Particularity Pleading Standard.

Fed. R. Civ. Pro. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[4] In the

---

[4] F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*,

Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy Rule 9(b)'s heightened pleading requirements. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A motion to dismiss a claim "grounded in fraud" under Rule 9(b) for failure to plead with particularity is the "functional equivalent" of a Fed. R. Civ. Pro. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107.

Rule 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727,731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; *citing Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the
> circumstances constituting fraud. The time, place and
> content of an alleged misrepresentation may identify the
> statement or the omission complained of, but these

317 F.3d 1097, 1103 (9th Cir. 2003) (*quoting Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1995) (italics in original)).

circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth.... [W]e [have] observed that plaintiff must include statements regarding the time, place, and nature of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." ... The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading....

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297 (C.D. Cal. 1996).

In a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written."  *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991).

The Complaint's conclusory allegations fail to meet Rule 9(b)'s strict standard. The Complaint lacks precise allegations as to what the lender defendants allegedly promised or represented.  The Complaint alleges no facts to support fraud elements let alone the who, what, when, when and how of alleged misconduct.  Mere allegations of "deceiving Plaintiff," and "selling a mortgage loan that will fail" are insufficient to state a claim for fraud.

1   Defendants' motion to dismiss Plaintiff's thirteenth claim

2   is GRANTED.

3

4       7.   **FACTA Claim (Eleventh Claim).**

5           a.   **Timeliness.**

6   Defendants assert that Plaintiff's eleventh claim for

7   violation of the Fair and Accurate Credit Transaction Act

8   ("FACTA") is untimely because it was not brought within the four

9   year statute of limitations.  The statute of limitations under

10  FACTA is two years. 15 U.S.C. § 1681p (stating that a plaintiff

11  must bring a FACTA action within "2 years after the date of

12  discovery by the plaintiff of the violation that is the basis for

13  such liability.").

14

15  "Under federal law a cause of action accrues when the

16  plaintiff is aware of the wrong." *Acri v. International Ass'n of*

17  *Machinists & Aerospace Workers*, 781 F.2d 1393, 1396 (1986).  That

18  is, "when the plaintiff 'knows or has reason to know of the

19  injury which is the basis of the action.'"  *Kemp v. Regents of*

20  *University of Cal.*, No. C-09-4687 PJH, 2010 WL 2889224 (N.D.Cal.

21  July 22, 2010) (*citing TwoRivers v. Lewis*, 174 F.3d 987, 991-992

22  (9th Cir.1999); *Trotter v. Int'l Longshoremen's & Warehousemen's*

23  *Union*, 704 F.2d 1141, 1143 (9th Cir.1983)).

24

25  Plaintiff alleges she did not receive the requite

26  disclosures when she executed the Loan September 5, 2006. Yet,

27  she did not file the current action until about five years later,

28

29

April 27, 2011.  Plaintiff has not shown anything which prevented her from comparing the loan documents and the statutory and regulatory requirement within the statutory period.  *See Kelley v. Countrywide Home Loans*, 2009 WL 3489422, *5-6 (E.D. Cal. Oct. 26, 2009).

Plaintiff's FACTA claim is barred by the statute of limitations.

    b.    Merits.

Defendants assert that FACTA does not apply to any Defendant.

FACTA only applies to consumer reporting agencies, which at least one district court has found does not include lenders.  *See Kakogui v. American Brokers Conduit*, No. C 09-4841 JF (HRL), 2010 WL 1265201, *5 (N.D. Cal. Mar.30, 2010) ("Plaintiff misapprehends the nature of [FACTA] in reading the statute to require that lenders and brokers [must] make credit scoring information available to borrowers.") (internal quotations omitted). Further, the section cited in Plaintiff's Complaint explains that a consumer must request credit information in order to obtain credit disclosures.  15 USC 1618g(a) ("Every consumer reporting agency shall, *upon request*. . . clearly and accurately disclose to the consumer:. . .") (emphasis added.) Plaintiff does not allege she requested any credit scoring information from Defendants; rather, she alleges that Defendants were obligated

30

to, *sua sponte*, provide her with credit scoring information. This is not the law.

Defendants' motion to dismiss Plaintiff's FACTA claim is GRANTED.

8.   RESPA (Tenth and Twenty-First Claim).[5]

a.   Timeliness.

An action for violation of RESPA is subject to, at most, a three year statute of limitations. 12 U.S.C. § 2614 ("Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought . . . within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation."). Plaintiff's RESPA claim is time-barred.

b.   Merits.

Plaintiff asserts she is (1) entitled to recession of the loan based on Defendants' failure to make clear, conspicuous, and accurate material disclosures and (2) entitled to damages because Defendants were paid "unearned fees, which were hidden from [Plaintiff] in the form of Yield Spread Premium." (Compl. ¶ 243.)

(1)   Rescission.

"[R]escission, whether under statute or common law, is

_____

[5] Plaintiff's tenth claim is pursuant to 24 C.F.R. 3500.10 which is a regulation under RESPA.

barred by limitations defenses and failure to tender amounts owed

under [Plaintiff's] loans. *Estillore v. Countrywide Bank FSB*,

2011 WL 348832, *22 (E.D. Cal. 2011). To obtain "rescission or

cancellation, the rule is that the complainant is required to do

equity, as a condition to his obtaining relief, by restoring to

the defendant everything of value which the plaintiff has

received in the transaction.... The rule applies although the

plaintiff was induced to enter into the contract by the

fraudulent representations of the defendant." Fleming v. Kagan,

189 Cal.App.2d 791, 796 (1961). "A valid and viable tender of

payment of the indebtedness owing is essential to an action to

cancel a voidable sale under a deed of trust." *Karlsen v.*

*American Sav. & Loan Assn.*, 15 Cal. App. 3d 112, 117. "The rules

which govern tenders are strict and are strictly applied."

*Nguyen v. Calhoun*, 105 Cal. App. 4th 428, 439 (2003).

In the absence of Plaintiff's meaningful tender, rescission

is an empty remedy. Defendants' motion to dismiss Plaintiff's

tenth claim for rescission based on violation of RESPA is

GRATNED.

### (2)   <u>Damages.</u>

Defendants point out that Plaintiff asserts no private right

of action for disclosure violations alleged in the Complaint, in

that RESPA creates a private right of action only "for violations

of specific, limited provisions."

RESPA's purpose is to "curb abusive settlement practices in the real estate industry. Such amorphous goals, however, do not translate into a legislative intent to create a private right of action." *Estillore*, 2011 WL 348832, *13 (*citing Bloom v. Martin*, 865 F. Supp. 1377, 1385 (N.D.Cal.1994), *aff'd*, 77 F.3d 318 (1996). "The structure of RESPA's various statutory provisions indicates that Congress did not intend to create a private right of action for disclosure violations under 12 U.S.C. § 2603 ... Congress did not intend to provide a private remedy ..." *Bloom*, 865 F. Supp. at 1384.

The absence of a private right of action for RESPA disclosure violations dooms a purported RESPA claim based on disclosure violations.

Defendants' motion to dismiss Plaintiff's twenty-first claim for damages based on violation of RESPA is GRANTED.


9.   <u>Violation of Cal. Civ. Code § 1916.7 (Sixth, twenty-second, twenty-third and twenty-fifth Claims).</u>

Defendants argue Plaintiff's Cal. Civ. Code § 1916.7 claims fail because section 1916.7, by its own terms, establishes that it only applies to mortgage loans made under that particular section. *See* Cal. Civ. Code § 1916.7(b) ("A mortgage loan *made pursuant to the provisions of this section*. . .") (emphasis added); *see also Mendoza v. Countrywide Home Loans*, Inc., 2009 U.S. Dist. LEXIS 112423, at *16 (N.D. Cal. Dec. 3, 2009).

Plaintiff does not respond to Defendants' argument and her Complaint is devoid of any facts asserting that her loan is one to which 1916.7 applies.

Defendants' motions to dismiss Plaintiff's Cal. Civ. Code section 1916.7 claims are GRANTED as to claims six, twenty-two, twenty-three and twenty five.

10. <u>Violation of Cal. Civ. Code §§ 1918-21 (Seventh Claim).</u>

Defendants assert that Cal. Civ. Code §§ 1918-21 do not create a private right of action[6] and even if they did, Plaintiff's conclusory statements insufficiently plead a claim.

California Civil Code section 1920 sets forth the requirements of a "mortgage instrument." *See* Cal. Civ. Code § 1920. Among the requirements is the mandate that lenders consider a borrower's ability to meet her mortgage obligations before they adjust interest rates and monthly payments, and that proper notice and disclosure be given to borrowers before lenders change loan rates or payments. *See id.* Section 1920 does not explicitly authorize a private right of action. *See Marks v. Chicoine*, 2007 WL 1056779, *8 (N.D. Cal. 2007).

Plaintiff's section 1920 claim also falls short on the merits. Plaintiff concedes in her Complaint that Defendants considered her ability to meet her mortgage obligations.

---

[6] Section 1918 a definitions section and section 1919 was repealed by Stats. 1997, c. 232 (A.B. 447), § 23.

Plaintiff states the Loan was based on her "credit score, stated income. . . and belief that the property would continue to increase in value." (Compl. ¶ 152.)

California Civil Code section 1921 provides that any lender offering adjustable-rate residential mortgages has to provide prospective borrowers with a copy of the Consumer Handbook on Adjustable Rate Mortgages. *See* Cal. Civ. Code § 1921.  This Section also does not explicitly authorize a private right of action.  In any case, Plaintiff does not allege that Defendants failed to provide her with the handbook.

Defendants' motion to dismiss Plaintiff's claim for violation of Cal. Civ. Code §§ 1918-21 is GRANTED.


11. <u>Violation of Cal. Civ. Code, Section 1632 (Eighth Claim).</u>

Cal. Civ. Code § 1632, the Foreign Language Contract Act ("FLCA"), provides in relevant part:

> (b) Any person engaged in a trade or business who negotiates primarily in. . . Tagalog, ... orally or in writing, ... shall deliver to the other party to the contract or agreement and prior to the execution thereof, a translation of the contract or agreement in the language in which the contract or agreement was negotiated, which includes a translation of every term and condition in that contract or agreement:
>
> . . .
>
> (2) A loan or extension of credit secured <u>other than by real property</u>, or unsecured, for use primarily for personal, family or household purposes.

*Id.* (emphasis added.)

35

Defendants assert this claim fails because "Plaintiff does not allege she negotiated any part of the loan transaction in any language but English."  (Doc. 7 at 14.) Defendants further assert "section 1632 only applies to '[a] loan or extension of credit secured *other* than by real property."  Cal. Civ. Code § 1632(b)(2) (" (emphasis added.)  Plaintiff does not address either argument.

Because Plaintiff has not alleged that her transactions were in Tagalog and because Plaintiff's loans are secured by real property, they are expressly excluded from Section 1632's provisions.

Defendants' motion to dismiss Plaintiff's claim for violation of Cal. Code Civ. Pro. Section 1632 is GRANTED.

12.  <u>Breach of Fiduciary Duty (Fifteenth Claim).</u>

Defendants contend that Plaintiff's claim for breach of fiduciary duty must fail because a lender owes no fiduciary duty to its loan customers.

To state a claim for breach of fiduciary duty, a plaintiff must show: (1) the existence of a fiduciary relationship; (2) the breach of that relationship; and (3) damage proximately caused by the breach.  *Roberts v. Lomanto*, 112 Cal.App.4th 1553, 1562 (2003).  However, "[a]bsent special circumstances ... a loan transaction is [an] at arms-length [transaction] and there is no fiduciary relationship between the borrower and lender."  *Oaks*

36

*Mgmt. Corp.*, 145 Cal. App. 4th at 466. "A commercial lender is entitled to pursue its economic interest in a loan transaction. This right is inconsistent with the obligations of a fiduciary, which require that the fiduciary knowingly agree to subordinate its interests to act on behalf of and for the benefit of another." *Gonzalez v. First Franklin Loan Services*, No. 1:09-CV-00941 AWI-GSA, 2010 WL 144862, *13 (E.D. Cal. Jan. 11, 2010).

Plaintiff offers no response to Defendants' argument. Defendants' motion to dismiss Plaintiff's fifteenth claim is GRATNED.

    13.   <u>Trespass and Conversion (Eighteenth and Nineteenth Claims.)</u>

        a.   <u>Trespass.</u>

Trespass to property includes an intrusion onto property, and damages. *Girard v. Ball*, 125 Cal. App. 3d 772, 788 (1981). Here, Plaintiff seems to conceded that no trespass or conversion has yet occurred, only that she fears the foreclosure process will result in her loss of the Property. (Compl. ¶ 225.) However, at paragraph 118 of the Complaint she asserts that Defendants "have completed a foreclosure action under the Note [sic] by way of non-judicial sale." Plaintiff's contradictory allegations equate to an insufficiently pled trespass claim.

Defendants' motion to dismiss Plaintiff trespass claim is GRANTED and are so factually inconsistent as to be fatal to the claim.

b.   Conversion.

"The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." *Oakdale Village Group v. Fong*, 43 Cal. App. 4th 539, 544 (1996).  Based on Plaintiff's contradictory statements regarding whether a foreclosure sale has taken place, she fails to plead a conversion claim.

Defendant's motion to dismiss Plaintiff's nineteenth claim is GRANTED.

14.   Quiet Title (Twentieth Claim).

Defendants contend that Plaintiff's quiet title claim is fatally defective because Plaintiff has failed to allege a tender. Plaintiff rejoins that the court has discretion as to whether tender is necessary.  California law in not in accord with Plaintiff's assertion.

Under California a law defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah v. United Savings Bank*, 43 Cal. App. 4th 1101, 1109 (1996).  "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted

38

against the purchaser at such a sale, even though the statute of
limitations has run against the indebtedness." *Sipe v. McKenna*,
88 Cal. App. 2d 1001, 1006 (1948).

*FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal. App. 3d
1018, 1021 (1989) (citations omitted) explains:

> [G]enerally "an action to set aside a trustee's sale for
> irregularities in sale notice or procedure should be
> accompanied by an offer to pay the full amount of the debt
> for which the property was security.".... This rule ... is
> based upon the equitable maxim that a court of equity will
> not order a useless act performed.... "A valid and viable
> tender of payment of the indebtedness owing is essential to
> an action to cancel a voidable sale under a deed of trust."
> ... The rationale behind the rule is that if plaintiffs
> could not have redeemed the property had the sale procedures
> been proper, any irregularities in the sale did not result
> in damages to the plaintiffs.

An action to set aside a foreclosure sale, unaccompanied by
an offer to redeem, does not state a cause of action which a
court of equity recognizes.  *Karlsen*, 15 Cal. App. 3d at 117. The
basic rule is that an offer of performance is of no effect if the
person making it is not able to perform.  *Id.* at 118 (*citing* Cal.
Civ. Code, § 1495). "It would be futile to set aside a
foreclosure sale on the technical ground that notice was
improper, if the party making the challenge did not first make
full tender and thereby establish his ability to purchase the
property."  *United States Cold Storage v. Great Western Savings &
Loan Assn.*, 165 Cal. App. 3d 1214, 1224 (1985); *see Mix v. Sodd*,
126 Cal. App. 3d 386, 390 (1981) ("a mortgagor in possession may
not maintain an action to quiet title, even though the debt is

unenforceable”); *Aguilar v. Bocci*, 39 Cal. App. 3d 475, 477

(1974) (trustor is unable to quiet title “without discharging his

debt”).

Here, Plaintiff does not allege tender.  Defendants’ motion

to dismiss Plaintiff’s twentieth claim is GRANTED.

> 15.  <u>Violation of Cal. Civ. Code § 2079.19 (twenty-fourth</u>
> <u>claim).</u>

Defendants contend Plaintiff’s claim for violation of Cal.

Civ. Code § 2079.19 should be dismissed.  Section 2079, *et seq.*

pertains to the duties of a real estate broker or sales person.

Section 2079.19 states if full:

> The payment of compensation or the obligation to pay
> compensation to an agent by the seller or buyer is not
> necessarily determinative of a particular agency
> relationship between an agent and the seller or buyer. A
> listing agent and a selling agent may agree to share any
> compensation or commission paid, or any right to any
> compensation or commission for which an obligation arises as
> the result of a real estate transaction, and the terms of
> any such agreement shall not necessarily be determinative of
> a particular relationship.

Plaintiff’s claim it is wholly inapplicable here because

Plaintiff does not allege any Defendants acted as a real estate

broker or agent, nor does Plaintiff make any mention whatsoever

to Section 2079.19 in her Opposition.

Defendants’ motion to dismiss Plaintiff’s claim for

Violation of Cal. Civ. Code § 2079.19 is GRANTED.

> 16.  <u>Failure to Modify Loan (Twenty-Seventh and Twenty-</u>
> <u>Eighth Claims).</u>

Plaintiff asserts Defendants failed to modify her loan in

violation of Cal. Civ. Code § 2923.5 and failed to attach the "requite declaration" under Section 2923.5 to the Notice of Default. (Compl. ¶ 227, 282.)

First, Defendants correctly point out that Plaintiff misunderstands the purpose of the statute.  Cal. Civ. Code section 2923.5 does not require modification.  While section 2923.5 requires the mortgagor to discuss options to prevent foreclosure, it does not require that any loan modification take place.  *See, e.g.* Cal. Civ. Code § 2923.5(b) ("A notice of default. . . shall include a declaration that the mortgagee, beneficiary, or authorized agent has <u>contacted</u> the borrower, has tried with due diligence to contact the borrower as required by this section.) (emphasis added.) By Plaintiff's own Complaint she concedes that she and her mortgagor attempted to "achieve a meaningful and substantial modification of the terms of her loan." (Compl. 275).

Second, by Chicago Title's RJN, Ex. B, Plaintiff's mortgagor, Countrywide, did include a declaration in the Notice of Default that "Countrywide tried with due diligence to contact the borrower in accordance with California Civil Code Section 2923.5."

Defendants' motion to dismiss Plaintiff's claim for violation of Cal. Civ. Code 2923.5 is GRANTED.  This includes Plaintiff's twenty-seventh and twenty-eighth claims.

1    **17.   Unjust Enrichment (Twenty-Sixth Claim).**

2         Plaintiff brings a separate "cause of action" for unjust

3    enrichment which asserts that "[a] forced sale of [Plaintiff's]

4    home, and allowance for Defendant's to recoup the [] profits. . .

5    would be inequitable and unconscionable."

6

7         Unjust enrichment "is not a separate cause of action," but,

8    rather, must rely on some other claim that is cognizable.  *See*

9    *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (2008)

10   ("[U]njust enrichment is not a cause of action[;] [r]ather it is

11   a general principle underlying various doctrines and

12   remedies[.]"); *see also Ib Melchior v. New Line Prods., Inc*. 106

13   Cal. App. 4th 779, 793 (2003) ( "[T]here is no cause of action in

14   California for unjust enrichment[;] [t]he phrase 'Unjust

15   Enrichment' does not describe a theory of recovery, but an

16   effect: the result of a failure to make restitution under

17   circumstances where it is equitable to do so.") (internal

18   quotation and citation omitted).

19

20        Unjust enrichment is not a cause of action and nonetheless

21   Plaintiff asserts no cognizable claim upon which to assert

22   Defendants were unjustly enriched.

23

24        Defendants' motion to dismiss Plaintiff's twenty-sixth

25   "claim" for unjust enrichment is GRANTED.

26

27        **18.   Violation Of Cal. Bus. and Prof. Code § 17200**
         **(Fourteenth and Seventeenth Claims).**

28        The Complaint attempts to allege claims under the Unfair

                                  42

Competition Law ("UCL"), Cal. Bus. and Prof. Code, §§ 17200, *et seq*. The Complaint's fourteenth claim alleges "[D]efendants failed to undergo a diligent underwriting process" to consummate "an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiff of her home, equity, as well as her past and future investment."  (Compl. ¶ 195.) The Complaint's seventeenth claim alleges: "This loan is marketed in whole or in part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact and was underwritten without due diligence by the party originating the loan." (Compl. ¶ 214.)

    Defendants fault the claims' failure to plead the requisite statutory violation or act of fraud for a UCL claim.

    "Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising.'"  *Blank v. Kirwan*, 39 Cal. 3d 311, 329 (1985) (*quoting* Cal. Bus. & Prof. Code, § 17200).  The UCL establishes three varieties of unfair competition–"acts or practices which are unlawful, or unfair, or fraudulent."  *Shvarts v. Budget Group, Inc.*, 81 Cal. App. 4th 1153, 1157 (2000).  An "unlawful business activity" includes anything that can properly be called a business practice and that at the same time is forbidden by law. *Blank*, 39 Cal. 3d at 329 (*citing People v. McKale*, 25 Cal. 3d 626, 631-632 (1979)). "A business practice is 'unlawful' if it is 'forbidden by law.'"  *Walker v. Countrywide*

43

*Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1169 (2002).

The UCL "creates an independent action when a business practice violates some other law." *Walker*, 98 Cal. App. 4th at 1169.  The UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL. *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992).  Where a plaintiff cannot state a claim under the "borrowed" law, she cannot state a UCL claim either. *See, e.g., Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001).

Here, Plaintiff does not predicate her "unlawful" business claim on any other claim. Notwithstanding, Plaintiff's Complaint fails to state any viable cause of action.  Plaintiff has stated no "unlawful" UCL claim.  Defendants' motion to dismiss Plaintiff's fourteenth and seventeenth claims is GRANTED.

D.   Declaratory and Injunctive Relief (First and Second "Claims").

Under 28 U.S.C. § 2201, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  A party seeking declaratory relief must establish that there is a present and actual controversy between the parties. *City of Cotati v. Cashman*, 29 Cal. 4th 69, 80 (2002). Declaratory relief is only appropriate "(1) when the judgment will serve a

44

useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986).

Declaratory relief is ultimately a request for relief, rather than a cause of action, and in order to weigh it the underlying claims must be valid. *See, e.g., Weiner v. Klais & Co.*, 108 F.3d 86, 92 (6th Cir. 1997) ("With regard to Count IV, in which plaintiff seeks declaratory relief, plaintiff has merely asserted a form of relief, not a cause of action. Plaintiff is not entitled to this relief in the absence of a viable claim."); *Lane v. Vitek Real Estate Indus. Group,* 713 F. Supp. 2d 1092, 1104 (E.D. Cal. 2010) (*citing McDowell v. Watson,* 59 Cal. App. 4th 1155, 1159 (1997) ("Injunctive relief is a remedy and not, in itself a cause of action." (internal quotation marks omitted)).

Since Plaintiff's other claims have been dismissed and declaratory relief is not a cause of action in and of itself, there is no basis for declaratory relief.  Defendants' motion to dismiss Plaintiff's first and second "causes of action" is GRANTED.


## VI. CONCLUSION

While leave to amend is usually freely given, it need not be when it is plain that the complaint is without merit for reasons

45

that cannot be cured by amendment. *See, e.g., Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005). Such is the case here. No matter what amendment Plaintiff might offer, her claims are either time-barred, barred by their inability to tender, based upon inapplicable and discredited legal theories or devoid of any meaningful factual allegations.

The Complaint's blizzard of purported violations under federal and California law is insufficient. The Complaint is a conglomeration of statutory quotations, formulaic recitations and vague assertions of misconduct. It lacks any cognizable claims or legal theories upon which to premise liability. The Complaint lacks specific, clearly defined allegations to give fair notice of claims plainly and succinctly to warrant dismissal of this action.

For all the reasons state above, Defendants' Motion to Dismiss is GRANTED WITHOUT LEAVE TO AMEND in its entirety.

Defendants shall submit a form of judgment consistent with this decision within five (5) days following electronic service of this decision.

SO ORDERED.

Dated: August 31, 2011                    ___/s/ Oliver W. Wanger___

                              Oliver W. Wanger
                         United States District Judge